No. 23-240

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

NEWREZ LLC. d/b/a Shellpoint Mortgage Servicing,

*Defendant-Petitioner,*

---v.---

IRENE YATES,

*Plaintiff - Respondent.*

ON PETITION FOR PERMISSION TO APPEAL
FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Case No. 8:21-cv-03044-TDC

(Hon. Theodore T. Chuang)

_____

## IRENE YATES'S OPPOSITION TO SHELLPOINT'S FEDERAL RULE OF CIVIL PROCEDURE 23(f) PETITION

Thomas J. Minton
**GOLDMAN & MINTON, P.C.**
3600 Clipper Mill Rd., Suite 201
Baltimore, MD 21211
(410) 783-7575
tminton@charmcitylegal.com

Scott C. Borison
**BORISON FIRM LLC**
1400 S. Charles Street
Baltimore, MD 21230
(301) 620-1016
scott@borisonfirm.com

Phillip R. Robinson
**CONSUMER LAW CENTER**
10125 Colesville Rd., Suite 378
Silver Spring, MD 20901
(301) 448-1304
phillip@marylandconsumer.com

*Counsel for Plaintiff-Respondent*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-240__          Caption: __NewRez LLC d/b/a Shellpoint Mortgage Servicing v. Irene Yates__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Irene Yates__
(name of party/amicus)

_____

 who is _____Respondent_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?     ☐YES ☑NO


2.     Does party/amicus have any parent corporations?     ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:



3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?     ☐YES ☑NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?              ☐YES ☑NO
       If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
       If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?              ☐YES ☑NO
       If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?              ☐YES ☑NO
       If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Phillip Robinson                              Date:          9/5/2023

Counsel for: Respondent Irene Yates

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

**Page**

Table of Authorities……………………………………………………............    ii

I.    Introduction………………………………………………………    1

II.   Standard of Review……………………………………………    3

III.  Analysis…………………………………………………………….    5

    A.  "It is well-established that a cause of action under the usury statute remains available if the loan is not fully paid."……………………………………………………..    6

    B.  The District Court ruling is legally correct…………………    11

    C.  Shellpoint has not cited any relevant Maryland law support for its argument……………………………………………………    11

    D.  The Usury statute's history shows that COM. LAW. § 12-111 is a statute of limitations……………………………………….    14

IV.  Conclusion……………………………………………………………    19

    Certificate of Compliance…………………………………………    21

    Certificate of Service………………………………………………    22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997 (4th Cir. 1998) .......................................... 9, 11

*Border State Perpetual Bldg. Ass'n of Baltimore City v. Hayes*, 61 Md. 597 (1884) .......................................... 17-18

*Border State Bldg. Ass'n v. Hilleary*, 68 Md. 52 (1887) .......................................... 18

*Brenner v. Plitt*, 34 A.2d 853 (1943) .......................................... *passim*

*Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998) .......................................... 4

*Cal Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497 (2017) .......................................... 14-15

*EQT Prod. Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014) .......................................... 3-4

*Est. of Naegele v. Khawaja*, No. 21-2000, 2021 WL 5575213 (10th Cir. Nov. 30, 2021) .......................................... 13

*FWK Holdings, LLC v. Merck & Co.*, 7 F.4th 227 (4th Cir. 2021) .......................................... 4

*Hottle v. Beech Aircraft Corp.*, 47 F.3d 106 (4th Cir. 1995) .......................................... 11

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573 (2010) .......................................... 6, 8

*JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211 (Del. Ch. 2019) .......................................... 13

*Lavis v. Reverse Mortgage Solutions, LLC,* No. 5:17-CV-00209, 2017 WL 2531580 (S.D.W. Va. June 9, 2017) .......................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**<u>Cases Cont.</u>**

*Lienhart v. Dryvit Sys.*, 255 F.3d 138 (4th Cir. 2001)  4

*Mastercard Int'l Inc. v. Scoma Chiropractic, P.A.*, 2022 U.S. App. LEXIS 6844 (11th Cir. March 16, 2022)  4

*Master Fin., Inc. v. Crowder*, 972 A.2d 864 (2009)  7-8

*Mayor of Oakland v. Mayor of Mt. Lake Park*, 896 A.2d 1036 (2006)  9

*McKiver v. Murphy-Brown, LLC*, 980 F.3d 937 (4th Cir. 2020)  11

*Miller v. Pac. Shore Funding*, 92 F. App'x 933 (4th Cir. 2004)  7, 12

*Nationstar Mortg. LLC v. Kemp*, 258 A.3d 296 (2021)  5, 16

*Patton v. Wells Fargo Fin. Md., Inc.*, 85 A.3d 167 (2014)  *passim*

*Second German Am. Bldg. Ass'n of Baltimore City v. Newman*, 50 Md. 62 (1878)  16-17

*Shepard v. Ocwen Fed. Bank, FSB*, 638 S.E.2d 197 (N.C. 2006)  12

*Taylor v. Friedman*, 689 A.2d 59 (1997)  5, 8

*Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F. 3d 311 (4th Cir. 2006)  5

*Wal-Mart Stores v. Dukes*, 564 U.S. 338 (2011)  2

# TABLE OF AUTHORITIES

**Page(s)**

## Cases Cont.

*White v. Bank of Am., N.A.*, 2012 U.S. Dist. LEXIS 44044 (D. Md. March 27, 2012)                8

*Woods v. Matchett*, 47 Md. 390 (1877)              16

## Statutes

Com. Law §12-111                                              *passim*

## Statutes Cont.

Com. Law § 12-114                                               1

Com. Law § 12-121                                            1, 5

Com. Law § 12-401, *et seq.*                                   7

Com. Law § 12-1019                                       *passim*

Cts. & Jud. Proc. § 5-101                                       6

Del. Code Ann. Title 8, § 174                                  13

Md. Ann. Code Art. 49, § 6                                 17-18

Md. Ann. Code Art. 49, § 11                                   18

N.C. Gen. Stat § 1-53                                          12

## Rules

Fed. R. Civ. P. 23                                           1-3

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Other
Authorities**

12 C.F.R. § 1024.38                                    14

MD. CODE REGS. 09.03.06.05                             14

v

## I.    __INTRODUCTION__

Plaintiff/Respondent Irene Yates, through her undersigned attorneys, opposes the Petition of Defendant NewRez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") under FED. R. CIV. P. 23(f), seeking to appeal the District Court's certification of a class action filed by Ms. Yates on behalf of Maryland homeowners.

The central allegation of this case is that Shellpoint, a licensed mortgage servicer in Maryland, imposed illegal usurious charges in the form "property inspection fees" on thousands of homeowners' accounts, in violation of Maryland law.  The statute is MD. CODE ANN., COM. LAW § 12-121, which provides:

> (b) Except as provided in subsection (c) of this section [not relevant in this case], a lender may not impose a lender's inspection fee in connection with a loan secured by residential real property.

A remedy for violations of the law is authorized in COM. LAW § 12-114, which provides:

> (b)(1) Any person who violates the usury provisions of this subtitle shall forfeit to the borrower the greater of:
>   (i) Three times the amount of interest and charges collected in excess of the interest and charges authorized by this subtitle; or
>   (ii) The sum of $500.

Shellpoint concedes that it imposed the illegal usury charge on nearly 29,000 occasions.   (Shellpoint Pet., p. 8).

1

In its Petition, Shellpoint does not challenge the District Court's factual finding that the class meets each of the requirements for certification under FED. R. CIV. P. 23(a) and (b).  Shellpoint does not challenge that the requirements were met by the District Court's "rigorous analysis" after a full period of discovery.  *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350-351 (2011).  Shellpoint does not claim that Ms. Yates would be excluded from the class if its theory of the statute of limitations were correct. Rather, at bottom Shellpoint's Petition raises a misguided statute of limitations defense, expressing an ill-conceived disagreement with the Maryland Supreme Court's view of Maryland law and the policy choices of the legislature, in an attempt to reduce the size of the class from those victimized by 28,993 illegal charges, whose loans were still active or were deemed "satisfied" less than six months before suit was filed, down to those who were victimized by 7,306 illegal charges more recently imposed unlawfully by it. (Shellpoint Pet., p. 8).

Shellpoint's statute of limitations argument relies on three mistaken premises:

(1) The District Court abused its discretion when it strictly followed the Supreme Court of Maryland's interpretation of the statutory language at issue;[1]

(2)  The statute at issue must be a statute of repose, not a statute of limitations, despite the Supreme Court of Maryland's contrary, stated view, and;

(3) The 200-year legislative and adjudicative history of this remedial usury statute should be ignored, as it would make for bad public policy if illegal charges that were imposed on mortgage loans could be recovered by the borrowers while their loans were still open and unsatisfied.

## II.  <u>STANDARD OF REVIEW</u>

There are two legal standards that come into play on an appeal under FED. R. CIV. P. 23(f).  The first relates to whether the issue raised by Petitioner should be heard under the Rule, which is discretionary.  The second relates to whether the certification should be upheld or reversed *if* the Court agrees to take up the issue. In its Petition, Shellpoint conflates the two standards by focusing only on the first part of the analysis, citing *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357 (4th Cir.

---

[1]     The Supreme Court of Maryland was formerly called the Maryland Court of Appeals.  It will be referred to by its new name throughout this memorandum.

2014), in order to urge the Court to consider appealability using a "holistic" approach. (Shellpoint Pet., p. 7).[2]

Shellpoint is only partly correct on its application of *EQT*. It overlooks the second test: "We review a district court's decision to certify a class for abuse of discretion." *Id.* In so holding, the *EQT* court relied on *Lienhart v. Dryvit Sys.*, 255 F.3d 138 (4th Cir. 2001), which explained: "The weakness of the district court's certification, viewed in terms of the likelihood of reversal ***under an abuse of discretion standard***, operates on a 'sliding scale' in conjunction with the other factors enumerated by the Eleventh Circuit in [*Prado-Steiman v. Bush*, 221 F.3d 1266 (11th Cir. 2000)]." *Id.,* at 145 (emphasis added). *See also FWK Holdings, LLC v. Merck & Co.*, 7 F.4th 227, 233 (4th Cir. 2021).

The distinction between the "holistic" perspective on appealability, and the "abuse of discretion" standard of review is important. The issue that is appealed to may be consequential enough to warrant this Court's attention, but its significance does not dictate the result. To overturn class certification on the narrow issue that

---

[2]    Shellpoint also cites *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998) as to the appealability of a decision involving the statute of limitations. The case addressed individualized tolling. It held: "[I]n this class action the statutes of limitations did not bar the claims despite evidence that some class members, and even some named plaintiffs, knew about the challenged payments from the WAC account outside the relevant limitations periods." *Id.* at 344. This case presents an entirely different issue, which is a pure question of state law that has already been answered by the state courts.

4

is the subject of its Petition, Shellpoint must demonstrate that the district court abused its discretion by committing an error of law. *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F. 3d 311, 317 (4th Cir. 2006). *See also Mastercard Int'l Inc. v. Scoma Chiropractic, P.A.*, 2022 U.S. App. LEXIS 6844 at * 3-4 (11th Cir. March 16, 2022). This Shellpoint cannot do. The District Court was bound by, and properly applied, Supreme Court of Maryland precedent.

## III. <u>ANALYSIS</u>

Shellpoint's Petition is unsupported by any relevant authority, and rests on a construct that the Supreme Court of Maryland has specifically rejected. It also runs counter to the strong condemnation of usurious mortgage fees articulated by the Supreme Court of Maryland in *Nationstar Mortg. LLC v. Kemp*, 258 A.3d 296 (2021) and *Taylor v. Friedman*, 689 A.2d 59, 60 (1997).

As also noted in *Kemp:* "Since at least January 2014, the Maryland Commissioner of Financial Regulation has taken the position that mortgage servicers…are subject to the prohibition on inspection fees in CL § 12-121 during the life of a mortgage loan." *Kemp*, 258 A.3d at 303. Shellpoint systematically disregarded the agency's direction on nearly 29,000 occasions. (Shellpoint Pet., p. 8). Shellpoint's claim that the illegality of its scheme was apparent "only in the last few years" rings hollow. (Shellpoint Pet., p. 20).

> [The Supreme Court has] long recognized the "common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally." *Barlow v. United States,* 7 Pet. 404, 411, 8 L.Ed. 728 (1833) (opinion for the Court by Story, J.); see also *Cheek v. United States*, 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991) ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system"). Our law is therefore no stranger to the possibility that an act may be "intentional" for purposes of civil liability, even if the actor lacked actual knowledge that her conduct violated the law.

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 581–83 (2010).

Shellpoint contends Maryland's general three-year statute of limitations applies to Ms. Yates's and the class members' claims. The general provision, Cts. & Jud. Proc. § 5-101, provides: "A civil action at law shall be filed within three years from the date it accrues **unless another provision of the Code provides a different period of time within which an action shall be commenced.**" (Emphasis added). By its terms, the general Cts. & Jud. Proc. § 5-101 statute of limitations gives way to a more specific statute such as Com. Law §12-111(b) that applies to the usury claims advanced in this action.

A. "It is well-established that a cause of action under the usury statute remains available if the loan is not fully paid." [3]

---

[3]     *Patton v. Wells Fargo Fin. Md., Inc.*, 85 A.3d 167, 180 (2014), citing *Brenner v. Plitt*, 34 A.2d 853 (1943).

The Usury statute, like many other statutes, provides its own statute of limitations. COM. LAW. § 12-111.  Indeed, three of the subtitles of Title 12 of the Maryland Commercial Code that govern the terms under which extensions of credit are made contain their own statutes of limitations. Two of them, the Closed End Credit Provisions ("CLEC" - Subtitle 10) and the Usury statute (Subtitle 1), have identically worded statutes of limitations that expire "six months after the loan is satisfied." (COM. LAW §§ 12-111; 12-1019).[4]

In analyzing the limitations issue where the cause of action is statutory a court must first determine whether the statute provides its own limitations period. In *Master Fin., Inc. v. Crowder*, 972 A.2d 864, 873 (2009), the Supreme Court of Maryland explained this guiding principle as follows:

> Because we are dealing with statutes, one preliminary and possibly decisive factor is whether the Legislature has provided a specific period of limitations for enforcement of the statute. Some statutes that prohibit or require conduct and provide remedies for violations contain such provisions, and if they do, those provisions ordinarily will govern. See, for example, CL § 11-109(c) (requiring that civil action seeking damages for violation of Foreign Discriminatory Boycotts Act be brought within four years); CL § 11-209(d) (same for

---

[4]    Notably, Maryland's Secondary Mortgage Loan Act (COM. LAW. §§ 12-401, *et seq*.) does not contain its own limitations provision. Thus, Shellpoint's reliance upon this Court's unpublished decision in *Miller v. Pac. Shore Funding*, 92 F. App'x 933, 937 (4th Cir. 2004) (cited in Shellpoint Pet., p. 14) is misplaced. [T]he issue in *Miller* was whether the district court properly rejected the plaintiffs' effort to toll the applicable statute of limitations. In this case, Ms. Yates's claims and the claims of the Class do not invoke tolling, and no part of the class certification Order involves tolling.

bringing civil action for damages for violation of Antitrust Act); CL § 12-1019 (requiring that civil action for violation of Credit Grantor Closed End Credit Act be filed no later than six months after loan is satisfied). The issue of CJP § 5-102(a)(6) ordinarily arises only if the regulatory statute is silent in that regard.

*Id.*

The last reference in the quoted passage, to COM. LAW § 12-1019, has added significance here, both because *Crowder* deemed it a "statute of limitations," not a statute of repose, and because COM. LAW § 12-1019 is identical to, and was derived directly from the usury statute, COM. LAW § 12-111. *See also White v. Bank of Am., N.A.*, No. CIV. CCB-10-1183, 2012 WL 1067657, at *8 (D. Md. Mar. 27, 2012)("Contrary to defendants' contention, however, CLEC does have a statute of limitations, which requires that suit be brought no more than 'six months after the loan is satisfied'")(cleaned up). Since it ignored the precedents of *Taylor*, *Crowder*, *Patton* and its own regulator's guidance, Shellpoint now claims that the legal issue is "unsettled" as to COM. LAW § 12-111 (Shellpoint Pet., p. 18), but that assertion is wrong and the legal error cannot be excused. *Jerman*, 559 U.S. at 581–83.

The Supreme Court of Maryland has spoken clearly and unambiguously on COM. LAW § 12-111 when interpreting Com. Law § 12-1019's identical language. The District Court did not have to devise its own interpretation of COM. LAW § 12-111 because the Maryland Supreme Court already had done so.

Federal courts applying Maryland law are obligated to follow the controlling

decisions of Maryland's highest court.  This Court has said:

> It is axiomatic that in determining state law a federal court
> must look first and foremost to the law of the state's highest
> court, giving appropriate effect to all its implications. A state's
> highest court need not have previously decided a case with
> identical facts for state law to be clear. It is enough that a fair
> reading of a decision by a state's highest court directs one to a
> particular conclusion.

*Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir. 1998).

The District Court's application of the limitations law to this case was fully

informed by the Supreme Court of Maryland's thorough discussion of the statutory

language in *Patton*. Shellpoint's theoretical premise that the law is "unsettled"

rests on the unsound assumption that when the Supreme Court of Maryland

analyzed COM. LAW § 12-111 in detail as the source for the wording of COM. LAW

§ 12-1019 in *Patton*, it left open the possibility that the identical statutory language

would mean something different in each statute.  The argument runs counter to a

fundamental rule of statutory construction. "In construing statutes, we presume that

the General Assembly acted with full knowledge of prior legislation and intended

statutes affecting the same subject matter 'to blend into a consistent and

harmonious body of law….' Therefore, we read together statutes on the same

subject and harmonize them to the extent possible…." *Mayor of Oakland v. Mayor

of Mt. Lake Park,* 896 A.2d 1036, 1045 (2006).

Shellpoint's argument also directly contradicts what the Supreme Court of Maryland has said about COM. LAW § 12-111. The limitations provision at issue in *Patton* was the identical COM. LAW § 12-1019. The Court wrote: "A review of the legislative history of CL §12-1019 leaves *no doubt* that the General Assembly intended to create a statute of limitations for actions alleging violations of CLEC." *Patton*, 85 A.3d at 179 (emphasis added). Further:

> [T]here is no mystery as to where the Legislature obtained the language of CL §12-1019. As the bill file indicates, at the time CL §12-1019 was enacted, another statute that regulated over-reaching by lenders as to consumer borrowers already contained *a statute of limitations* for actions brought by a borrower alleging a violation by a lender. In particular, then as now, the usury statute had *a limitations provision*, which reads as follows: "An action for usury under this subtitle may not be brought more than six months after the loan is satisfied." CL §12-111. Even if the bill file were not explicit, it is evident that this provision was the source for the language adopted for the CLEC statute of limitations….
>
> *It is well-established that a cause of action under the usury statute — the model for CL §12-1019 — remains available if the loan is not fully paid.* See *Brenner v. Plitt*, 182 Md. 348, 34 A.2d 853 (1943).

*Id.,* at 180 (emphasis added).

This statement does not show a legal framework that is "unsettled." The Supreme Court of Maryland has deemed it to be "well-established," which is the opposite of "unsettled." The scope of the certified class in this case is precisely the scope that "well-established" Maryland law prescribes.

B.  The District Court ruling is legally correct.

When the Supreme Court of Maryland writes that "it is well-established that a cause of action under the usury statute … remains available if the loan is not fully paid," a federal court cannot be said to have abused its discretion in applying that law to this case.  *Assicurazioni*, 160 F.3d at 1002; *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 963-64 (4th Cir. 2020); *Hottle v. Beech Aircraft Corp.*, 47 F.3d 106, 109 (4th Cir. 1995).

More specifically, in this case the District Court was correct when it wrote: "In *Patton*, the court specifically found that [COM. LAW § 12-1019] derives from and uses the same language as the statute of limitations for the Maryland Usury Law…. Shellpoint has identified no case law – and the court is unaware of any – stating that MD. CODE ANN., COM. LAW § 12-111 is a statute of repose…." Because "the statute of limitations for [CLEC] has been interpreted to permit causes of action to be brought up to six months after a loan has been satisfied," the District Court was also correct to hold that identical language in "Section 12-111 establishes the statute of limitations for claims under the Maryland Usury Law." Any other result would be legally erroneous and would be in direct conflict with the holdings of the Supreme Court of Maryland which has already answered Maryland law on this point.

C. Shellpoint has not cited any relevant Maryland law support for its argument

11

Shellpoint's failure to find legal support under Maryland law to avoid the clear statement of the Supreme Court of Maryland in *Patton* persists in this Court. The unreported case of *Miller* 92 F. App'x at 937 does arise under another title of the Maryland Commercial Code, but neither CLEC nor the Usury statute is implicated. *Miller* addressed tolling with respect to a statute that does not have its own limitations provision. No party has made any claim related to tolling in this action.

In *Lavis v. Reverse Mortgage Solutions, LLC*, No. 5:17-CV-00209, 2017 WL 2531580 (S.D.W. Va. June 9, 2017), the court explicitly recognized that the West Virginia statute governing the allegedly illegal fees "[did] not contain a statute of limitations provision, and the West Virginia Supreme Court of Appeals has not determined the appropriate statute of limitations." *Id.* at *4. The case has no relevance here; the class claims do not involve any West Virginia statute.

Shellpoint also points to *Shepard v. Ocwen Fed. Bank, FSB*, 638 S.E.2d 197 (N.C. 2006) which concerns claims arising under N.C. GEN. STAT § 1-53. That statute provides that "an action to recover the penalty for usury, including an action regarding … usurious fees, or other usurious charges" must be brought within "two years." *Id.* This statute is worded differently from Maryland law at issue in this action and the intricacies of North Carolina law are irrelevant. Simply, *Shepard* does not provide any guidance with respect to Maryland's statutory scheme.

12

Shellpoint also relies upon *JPMorgan Chase Bank, N.A. v. Ballard*, 213 A.3d 1211 (Del. Ch. 2019) which is a case involving director liability for the payment of wrongful dividends. The statute at issue, DEL. CODE ANN. Title 8, § 174 provided a six-year period in which suit could be filed to recover the payments. The Delaware Chancery Court determined that the § 174 claim was untimely because the plaintiff did not file the action until "more than six years after any of the challenged dividends were paid." *Ballard,* 213 A.3d at 1216. The court used the term "statute of repose," but it does not appear to have done so in a manner that illuminates any issue in this case. In any event, Delaware Chancery Court did not address Maryland's usury statute.

Finally, the Tenth Circuit in the *Est. of Naegele v. Khawaja*, No. 21-2000, 2021 WL 5575213 (10th Cir. Nov. 30, 2021) considered a wrongful death action brought under the laws of New Mexico relating to public employees. *Id.* at *1. The statute in question provided an explicit two-year limitations period, which the court deemed strictly enforceable, notwithstanding the "discovery" rule and a separate statute of repose. *Id.,* at *4-5. This case does not involve any New Mexico statute or law.

The Supreme Court of Maryland has addressed and answered the legal question presented by Shellpoint's Petition. There is no reason for this Court to

look to other state laws or other statutory schemes for direction, and the District
Court would have committed legal error had it done so.

    D.  The Usury statute's history shows that COM. LAW. § 12-111 is a statute
of limitations

    Much of the discussion in the cases relied upon by Shellpoint focuses on
statutory "tolling" issues.  In general, statutes of repose embody a public policy
that puts a limit on tolling.  Nothing about COM. LAW § 12-111 suggests that
tolling was a concern for the Maryland legislature.  Rather, the history of the
statute demonstrates that the principal purpose behind the enactment of the
provision was to ensure that victims of usurious charges could pursue their claims
so long as the loan was open (as they could at common law) and six months
beyond that, if the loans were not yet satisfied.

    Shellpoint's more general discussion of statutes of repose seems designed to
suggest that it would be unwise, or perhaps unfair, to hold Shellpoint liable for its
statutory violations more than three years after they were committed.[5]  For
example, Shellpoint invokes the Supreme Court's holding in *Cal Pub. Employees'*

---

[5]     For this argument it should be noted that Shellpoint is required pursuant to
its license to act as a Maryland mortgage servicer to track and maintain all the
necessary data for each mortgage loan its services.  *See e.g.* MD. CODE REGS.
09.03.06.05.  *See also* 12 C.F.R. § 1024.38.  So, Shellpoint cannot candidly claim
it has any unusual burdens by applying the legally correct statute of limitations to
Ms. Yates' claims in COM. LAW § 12-111 since it has all the necessary records to
identify the class members and necessary data as part of its legal duties.

*Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 505 (2017) to argue that statutes of repose are enacted to give more explicit protections to defendants, such that they are "free from liability after a legislatively determined period of time." *Id.*, quoting *CTS Corp. v. Waldburger*, 573 U.S. 1, 9 (2014). The statutes in these cases, however, were explicit as to both limitations periods and applicable statutes of repose. The North Carolina statute at issue in *Waldburger* unambiguously restricted the tolling of a statute of limitations based on the "discovery" rule. "Like a discharge in bankruptcy, a statute of repose can be said to provide a fresh start or freedom from liability." *Id.,* at 9. In Maryland, however, mortgage servicers do not get a "fresh start" to foist illegal charges on borrowers every three years, if the loan is still open and remains unsatisfied to avoid the result of their usurious conduct.

Moreover, Shellpoint's invocation of this "fresh start" protection runs contrary to the history of usury legislation and jurisprudence in Maryland, where violations of the usury statute have always been strongly condemned.

> Usury is a moral taint wherever it exists and no subterfuge shall be permitted to conceal it from the eye of the law. In *Andrews v. Poe*, 30 Md. 485, it is said that "it matters not in what part of the transaction it may lurk, or what form it may take … or under whatever guise the lender -- always fruitful in expedients -- may attempt to evade the law, Courts of justice, disregarding the shadow and looking to the substance, will ascertain what in truth was the contract between the parties." [T]he court in the case of *Woods v. Matchett*, 47 Md.

> 390, decided in 1877, says: "It is well settled in this State that
> a Court of equity will grant relief against the payment of
> usurious interest, even after judgment, and further than this,
> that an action at law would lie prior to the Act of 1876, to
> recover excessive interest actually paid."

*Brenner v. Plitt*, 34 A.2d 853, 858 (1943).  *See also Kemp*, 258 A.3d at 302 ("since money is fungible and people are creative, efforts to circumvent the restrictions of the Usury Law have sometimes taken the form of fees or other charges that were assessed to the borrower").

Over the years, this harsh view of usury has translated into a clear and expansive statute of limitations – one that runs with the life of the loan and for six months after it has been "satisfied." Prior versions of the modern statute modified the common law, which had allowed a borrower to pursue a claim for usury at any time, starting after the first payment of illegal interest and continuing indefinitely, even after a judgment on the debt.  *Woods v. Matchett,* 47 Md. 390 (1877) ("It is well settled in this State that a Court of equity will grant relief against the payment of usurious interest, even after judgment, and further than this, that an action at law would lie prior to the Act of 1876 to recover excessive interest actually paid").

As recognized by the court in *Second German Am. Bldg. Ass'n of Baltimore City v. Newman*, 50 Md. 62 (1878), the legislature in 1876 dramatically altered that common law right:

> It has been decided in *Scott v. Leary*, 34 Md. 389, that a party who has paid usury, was entitled to recover it back in an action at law; and the same decision was made in *Williar's Appeal,* 45 Md. 546. The intent of the Act of 1876 was to change the law in this respect, and to take away such right of action, in cases where the transaction has been closed and finally settled by the parties, and the debt has been paid and satisfied.

*Id. See also Border State Perpetual Bldg. Ass'n of Baltimore City v. Hayes*, 61 Md. 597 (1884) ("Prior to the Act of 1876 the debtor, who had paid usurious interest, had the right to recover back the excess over the legal rate, in an action for money had and received, notwithstanding the debt had been fully paid, and the transaction closed between the parties. This Act made a change in the law….")

As the court discussed in *Brenner*, the 1876 statute became codified in 1939 as MD. ANN. CODE ART. 49, § 6.[6] *Brenner* explains that the issue that commonly arose under the usury statute in previous cases under the 1876 Act was whether a loan remained open such that a cause of action for usury was still available to the borrower. *Id., citing Border State v. Hayes*, 61 Md. at 600 ("The original transaction is not closed and settled, and the appellee has therefore the right to a

---

[6] The *Brenner* case contains a more detailed chronology of the statute's evolution through various versions of the Code in the 19th and early 20th centuries. For purposes of this analysis, the essential feature that was originally enacted in 1876 to cut off usury claims at the time of the last payment and the "closing" of the transaction, was held by the court in *Brenner* to have remained in force throughout all amendments. 34 A.2d at 859.

rebate of all the usurious interest he has paid on the original mortgage."). *See also Border State Bldg. Ass'n v. Hilleary*, 68 Md. 52, 11 A. 505 (1887).

In 1968, the legislature repealed MD. ANN. CODE ART. 49, § 6 and replaced it with MD. ANN. CODE ART. 49, § 11, which stated:

> Nothing in the preceding sections of this Article shall be construed to make usury a cause of action in any case after the bond, bill obligatory, promissory note, bill of exchange, mortgage, or note secured by a deed of trust, security agreement, or other evidence of indebtedness, has been redeemed or settled for in money or other valuable consideration **for six months.**

*Id.* (Emphasis added).

The three words added to the end of the statute in 1968 were new. When the Commercial Law Article was enacted in 1975, MD. ANN. CODE ART. 49, § 11 was replaced with Subtitle 1 of Title 12. Following form and replacing the words "redeemed or settled" with the word "satisfied," COM. LAW § 12-111 states: "An action for usury under this subtitle may not be brought more than six months after the loan is satisfied." The provision creates finality for the lender –which is what Shellpoint complains is lacking - but it does not purport to eliminate the common law right of the borrower to recover usurious interest and fees for as long as the loan remained open. From the borrower's perspective, the legislation *extends* the limitations period beyond the time of the last installment payment.

This modern version of the statute, which remains in place and controls and governs this case, prescribes who is in the certified class. Nothing in the long history of the statute indicates that the real limitations period is just three years. The District Court's decision is historically correct, and legally sound under the controlling analysis in *Patton*. The issue was "settled" with the enactment of the modern version of Section 12, Title 1 of the Maryland Commercial Code.

## IV.     <u>CONCLUSION</u>

The decision of the District Court certifying a class in this matter is factually and legally correct. Shellpoint's focused attack on one aspect of the ruling, in which the court rejected Shellpoint's unsupported effort to reduce the class size by reference to an inapplicable statute of limitations, should also be rejected by this Court. The law as to the limitations period for private actions seeking recovery of usurious and illegal charges has been established since at least 1939, when the prior version of the Commercial Code was enacted, as made clear by the Supreme Court of Maryland in 1943 in *Brenner*. The *Patton* court's holding with respect to the modern version of the limitations provision is consistent with historical precedent, and binding on the federal courts.

[Signatures on Next Page]

19

Dated: September 4, 2023

Respectfully submitted,

*/s/Scott C. Borison*
Scott C. Borison (Bar No. 22596)
**BORISON FIRM LLC**
1400 S. Charles Street
Baltimore, Maryland 21230
(301) 620-1016
scott@borisonfirm.com

*/s/Phillip Robinson*
Phillip R. Robinson (Bar No. 27824)
**CONSUMER LAW CENTER LLC**
10125 Colesville Road, Suite 378
Silver Spring, Maryland 20901
(301) 448-1304
phillip@marylandconsumer.com

*/s/ Thomas J. Minton*
Thomas J. Minton (Bar No. 03370)
**GOLDMAN & MINTON, P.C.**
3600 Clipper Mill Road, Suite 201
Baltimore, Maryland 21211
(410) 783-7575
tminton@charmcitylegal.com

***Counsel for Plaintiff-Respondent and the Class and Putative Usury Class Members***

## <u>CERTIFICATION OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

- This brief contains 4,840 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because:

- This brief has been prepared in a proportionally spaced, 14-point Times New Roman font using Microsoft Word.

<u>/s/ Phillip Robinson</u>
Phillip Robinson

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2023, an electronic copy of the foregoing Responding Brief for Appellee was filed with the Clerk of the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system. I further certify that all parties in the case are represented by lead counsel who are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system upon the following:

Matthew A. Fitzgerald
Brian E. Pumphrey
MCGUIRE WOODS LLP
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4716
F: (804) 698-2251
mfitzgerald@mcguirewoods.com
bpumphrey@mcguirewoods.com

Mellisa O. Martinez
MCGUIRE WOODS LLP
500 East Pratt Street, Suite 1000
Baltimore, MD 21202
T: (410) 659-4432
F: (410) 659-4482
mmartinez@mcguirewoods.com

/s/ Phillip Robinson
Phillip Robinson